# In the United States District Court
## for the Southern District of Georgia
### Brunswick Division

| | | |
|---|---|---|
| LEE P. PLUNKETT, | * | |
| | * | |
| Plaintiff, | * | |
| | * | CIVIL ACTION NO.:CV214-015 |
| vs. | * | |
| | * | |
| JUDGE GEORGE M. ROUNTREE; CASA | * | |
| RICHARD JAMES; DEPARTMENT OF | * | |
| FAMILY AND CHILDREN SERVICES; | * | |
| Investigator KRISTEN KEENE; Investigator | * | |
| WALTER LEE; McCLARY BAKER; MARY | * | |
| MACY; BRITNEY MERRIMAN; | * | |
| CHANSENETTE AMISON; SAAG JIM | * | |
| CHAMBERLAIN; Director KRISTAL JONES; | * | |
| Case Worker LARHONDA HARRIS; ANDY | * | |
| PRUITT; and LYNETTE GALLAGHER, | * | |
| | * | |
| Defendants. | * | |

## ORDER

This action arises out of child deprivation proceedings in state juvenile court. The gravamen of Plaintiff's pro se Complaint appears to be that her constitutional rights, as well as state law, were violated in connection with the removal of her two sons from her custody, the litigation in state court, and the placement of her children in foster care. The many named Defendants played some role in one or more of those events: the Department of Family and Children Services ("DFCS"); Kristen Keene, a DFCS investigator; Walter Lee, another DFCS

investigator; Andy Pruitt, a DFCS supervisor; Chansenette
Amison, another DFCS supervisor; Larhonda Harris, a DFCS
caseworker; Kristal Jones, a DFCS director; Lynette Gallagher, a
City of Brunswick police officer; Mary Macy, another City of
Brunswick police officer;[1] Britney Merriman, a Glynn County
dispatcher; The Honorable George M. Rountree, a Glynn County
Juvenile Court Judge;[2] Jim Chamberlain, a Special Assistant
Attorney General ("SAAG"); Richard James, a Court Appointed
Special Advocate ("CASA"); and McClary Baker, a foster parent.
Dkt. No. 1, pp. 3-4; see also Dkt. No. 18, p. 2 & n.1; Dkt. No.
22, Ex. A, pp. 1-2; Dkt. No. 23, p. 1; Dkt. No. 44, p. 1.

Presently before the Court are Motions to Dismiss filed by
several Defendants, dkt. nos. 18, 22, 24-25, 30, 46, as well as
a Motion for Emergency Hearing filed by Plaintiff, dkt. no. 48.
For the reasons stated below, the Court **GRANTS** the Defendants'
Motions to Dismiss and **DISMISSES** Plaintiff's claims against
those Defendants. Because it appears that Plaintiff cannot
proceed on her claims against the nonmoving Defendants, the
Court also **DISMISSES** Plaintiff's remaining claims. Accordingly,

---

[1]   While Plaintiff's Complaint contains a list of Defendants that does not
include Macy, the factual allegations repeatedly refer to a police officer
that appears to be Macy. See Dkt. No. 1, pp. 3-6, 11-12. Accordingly, the
Clerk of Court listed Macy as a Defendant on the docket, and Plaintiff's
subsequent pleadings confirm her intention to name Macy as a Defendant to
this action. See, e.g., Dkt. No. 29, p. 1.

[2]   Plaintiff's Complaint correctly names "George M. Rountree," dkt. no. 1,
p. 4, yet this Defendant was docketed as "Judge George M. Roundtree." The
Clerk of Court is **directed** to change the name of said Defendant to "Judge
George M. Rountree" upon the docket and record of this case.

Plaintiff's pending Motion for Emergency Hearing is **DENIED as moot.**

## FACTUAL BACKGROUND[3]

### I.   Proceedings in Juvenile Court

Scattered throughout Plaintiff's Complaint and responses to the pending Motions to Dismiss are copies of various filings, transcripts, and orders from the deprivation proceedings in the Glynn County Juvenile Court ("Juvenile Court"). See, e.g., Dkt. No. 1, pp. 40-51. Attempting to construe Plaintiff's pro se pleadings liberally, the Court has pieced together the following events occurring in the Juvenile court that give rise to the instant dispute.

On March 28, 2013, DFCS filed a complaint against Plaintiff in the Juvenile Court. Dkt. No. 37, pp. 8-9. The complaint alleged that on March 26, 2013, Plaintiff neglected her two children, S.F. and C.F., and that DFCS took custody of the children. Id. at p. 8. The complaint explained that Plaintiff had "a history of mental health issues, violent tendencies which have led to police involvement, jail sentencing, and probation" and refused to cooperate with DFCS's request for her medical records. Id. at p. 9. As a result, DFCS determined that

---

[3]   While this Order dismisses Plaintiff's claims on grounds of lack of subject-matter jurisdiction, immunity, and other bars to suit below, the Court nonetheless provides the following in-depth recitation of facts to make clear that it has construed Plaintiff's pleadings liberally and combed through her various submissions for any viable claims.

Plaintiff was "unable to provide adequate supervision and maintenance" for S.F. and C.F. and that the children "would not be safe in her care." Id. Kristen Keene ("Keene") signed the complaint as the investigating officer on behalf of DFCS. Id.

Upon DFCS's filing of the complaint, the Juvenile Court held a detention hearing that same day before Judge George M. Rountree ("Judge Rountree"). Dkt. No. 34, p. 5. Plaintiff attended the detention hearing, along with her counsel at that time and the putative father of the children, who are not parties to the instant action. Id. Also present were Keene, DFCS supervisor Andy Pruitt ("Pruitt"), and SAAG Jim Chamberlain ("Chamberlain") representing DFCS. Id. According to the hearing transcript, the purpose of the detention hearing was to determine whether there was probable cause to find that the children were deprived. Id. Plaintiff stipulated that probable cause existed, and Judge Rountree ordered that the children remain in the custody of DFCS. Id.

At some point, a deprivation petition was filed, the date and author of which are omitted from the record in this case. Dkt. No. 1, p. 36. The petition set forth the same allegations as the DFCS complaint and further recommended that "it is in the best interest of the children and the public that this proceeding be brought." Id.

On April 11, 2013, Judge Rountree conducted an adjudicatory hearing. Id. at p. 40. The participants again included Plaintiff, her attorney, the putative father, Keene, and Chamberlain, along with an additional DFCS employee not named in the current action. Id. After hearing testimony from Keene, the putative father, and Plaintiff, Rountree concluded, "By clear and convincing evidence I find[ ] these children deprived and remain in the custody of the department." Id. at p. 50. Rountree further ordered Plaintiff to have a psychiatric evaluation and not to contact Keene or the children's foster parents. Id. at pp. 50-51.

Plaintiff filed a "motion of reunification" on July 8, 2013. Id. at p. 53. Plaintiff moved the Juvenile Court to return custody, expressing dissatisfaction with the removal of her children, the petition, and the DFCS case plan that the Juvenile Court approved for the children. Id. Plaintiff emphasized her progress—not only in the case plan but also with regard to church and her studies—and stated that she had learned from the experience. Id.

On July 10, 2013, Judge Rountree held a hearing on several matters, including a petition for custody filed by Pamela Capece ("Capece"), the children's grandmother;[4] a motion to return custody and an objection to case plan filed by Plaintiff; a

---

[4] Plaintiff has not named Capece as a defendant in this action.

motion to withdraw as attorney of record filed by Plaintiff's counsel, dkt. no. 34, pp. 7, 16; and a sua sponte judicial review of the case plan, dkt. no. 29, Ex. A, p. 4. In addition to the regular participants, this hearing was attended by DFCS caseworker Larhonda Harris ("Harris") as well as various other attendees not named as defendants here: counsel for the putative father, Capece and her counsel, Plaintiff's psychiatrist, and the deacon of Plaintiff's church. Dkt. No. 34, p. 7.

At the hearing, Capece withdrew her petition for custody in return for an agreement with DFCS allowing her visitation with the children. Id. at p. 8. Judge Rountree heard testimony from Plaintiff, her psychiatrist, and the deacon of her church and denied Plaintiff's motion to return custody on the basis that the case was not sufficiently developed for such a determination. Id. at pp. 18-25. Judge Rountree also sustained in part and overruled in part Plaintiff's objections to the case plan, modifying the "cause of removal" to include only "mental health and inadequate housing" and not "[s]ubstance abuse treatment." Id. at pp. 12-16. In addition, Judge Rountree granted Plaintiff's attorney's motion to withdraw, based on their disagreements concerning litigation strategy and communication. Id. at pp. 26, 28.

Judge Rountree's judicial review of the case plan based on the July 10, 2013, hearing was formalized in an order filed on

July 30, 2013. Dkt. No. 29, Ex. A, p. 9. In that order, Judge Rountree noted that the permanency plan included "[r]euinification with the mother no later than: March 26, 2014." Id. at Ex. A, p. 6. Nevertheless, Judge Rountree found that Plaintiff had not yet completed the goals of the case plan and that the children needed to remain in the custody of DFCS. Id. at Ex. A, pp. 6, 8.

Around that time, Plaintiff filed a petition to have allegedly false statements—concerning her mental evaluation and housing status—removed from the case plan. Dkt. No. 1, p. 14. Plaintiff also filed a "petition for deprivation," again requesting the return of her children. Id. at p. 18. The petition for deprivation detailed the removal of S.F. and C.F. from her custody on March 26, 2013, and alleged that the children had since been subjected to "physical abuse[,] abandonment, excessive use of dangerous medications, [and] mental and verbal abuse" in state care. Id.

In orders entered on October 17, 2013, Judge Rountree disposed of Plaintiff's petitions. Dkt. No. 37, pp. 14-15. Judge Rountree dismissed Plaintiff's petition for the removal of false statements, explaining that Plaintiff "fail[ed] to state a claim upon which relief c[ould] be granted." Id. at p. 14. Additionally, Judge Rountree denied Plaintiff's petition for deprivation on the basis that the petition was "not in [ ] the

best interest of the public and the . . . children." _Id._ at p. 15.

On November 8, 2013, Plaintiff, represented by new counsel, filed a motion for return of custody based on Plaintiff's "completion, or substantial completion, of the goals" in the case plan. _Id._ at p. 17. Judge Rountree denied this motion at a November 21, 2013, after hearing testimony from Plaintiff, the putative father, their psychiatrist, and a witness who provided transportation and supervision for the family's visitation with S.F. and C.F. Dkt. No. 34, pp. 46-65. Judge Rountree also conducted a judicial review of the children's placement and granted the putative father's motion for visitation and petition for legitimation. _Id._ at p. 65.

Plaintiff then filed a motion to transfer the case to McIntosh County on November 26, 2013. _See id._ at p. 29. Plaintiff also filed a motion on December 31, 2013, seeking a medical evaluation of the children, who appeared unhealthy and overmedicated. Dkt. No. 1, p. 77. Plaintiff's motion also accused SAAG Chamberlain, DFCS, and Harris of "unhanded stunts" and "lies" at the November hearing and of breaking the restraining order and court-ordered visitation. _Id._ Around that time, DFCS filed a petition for dependency. _See_ Dkt. No. 34, p. 29.

On February 28, 2014, the Juvenile Court entered an order of recusal stating that Plaintiff had recently filed the instant action in this Court against Judge Rountree. Dkt. No. 38, p. 5. The order explained that it would be inappropriate for Judge Rountree to continue to preside over the "currently pending" dependency proceedings against Plaintiff in the Juvenile Court. Id. The order requested that the Council of Juvenile Court Judges of Georgia assign a substitute judicial officer to Plaintiff's cases. Id. at p. 6.

On March 24, 2014, the Juvenile Court held a hearing on Plaintiff's motions to transfer case and for a medical evaluation as well as DFCS's petition for dependency. Dkt. No. 34, p. 29. Judge Marlo A. Ross ("Judge Ross"), who is not a Defendant in this action, presided over the hearing and heard testimony from Plaintiff, her psychiatrist, Capece, and Keene. Id. at pp. 29-45; see also Dkt. No. 62, Ex. A, p. 24. As the transcript shows, Plaintiff withdrew her motion to transfer, and the Court admitted into evidence a medical evaluation of the children. Dkt. No. 34, pp. 29-30. Finding the children to be dependent, Judge Ross extended custody in favor of DFCS. Id. at p. 45.

On June 5, 2014, Judge Ross conducted an initial judicial review hearing. See Dkt. No. 62, Ex. A, p. 1. On June 19, 2014, before Judge Ross had filed any order on the judicial

review, the guardian ad litem for S.F. and C.F. filed a motion to modify placement based on foster care problems arising after the judicial review hearing. Id. at Ex. A, p. 25. Specifically, since the hearing, the children had moved to their eighth foster home, the foster parent had then asked DFCS to remove the children, and DFCS was able to find only temporary, and no long-term, placement for the children. Id. at Ex. A, pp. 25-26. The guardian ad litem noted Plaintiff's substantial completion of the case plan, her stable living condition, and the success of recent unsupervised visitation, and recommended placement of the children with Plaintiff, with DFCS retaining legal custody. Id. at Ex. A, pp. 26-28. Judge Ross conducted a hearing on the guardian ad litem's Motion on July 1, 2014. Id. at Ex. A, p. 29.

On July 30, 2014, the Juvenile Court filed Judge Ross's orders on both the initial judicial review, id. at Ex. A, p. 3, and the guardian ad litem's motion to modify placement, id. at Ex. A, pp. 23-24, 29. The order on initial judicial review, dated July 28, 2014, showed that the permanency plans were, concurrently, "[r]eunification with parent(s)" and "adoption" but reported that DFCS did not intend to petition for the termination of Plaintiff's parental rights. Id. at Ex. A, pp. 4, 17, 22. The order also remarked that Plaintiff, while demonstrating progress appropriate for reunification, had not

yet completed the counseling goals; therefore, Judge Ross directed that the children remain in the custody of DFCS. Id. at Ex. A, pp. 6-8, 15, 19.

However, the order on the guardian ad litem's motion was dated later, on July 29, 2014, and granted the request for placement with Plaintiff. Id. at Ex. A, pp. 23-24, 29. Specifically, the order mandated that "legal custody of the . . . children be placed with the natural mother" and that DFCS's temporary legal custody be terminated. Id. at Ex. A, p. 23. With the return of custody were certain safeguards: DFCS was to provide "intensive aftercare services" for the children; DFCS and the guardian ad litem were "authorized to make unannounced home visits" and request random drug and alcohol screens of Plaintiff; Plaintiff had to continue counseling and take all prescribed medications; and Plaintiff could not allow unsupervised visitation with Capece until further order. Id. at Ex. A, pp. 23-24.

## II. Facts Alleged by Plaintiff

The gist of the factual allegations in Plaintiff's eighty-nine-page Complaint is that the fourteen Defendants treated Plaintiff or her children unfairly at various times during the deprivation process outlined above. See generally Dkt. No. 1. To begin, Plaintiff alleges that when her children were removed from her custody on March 26, 2013, Keene and fellow DFCS

investigator Walter Lee ("Lee")—along with two police officers, one of whom Plaintiff believes to be Britney Merriman ("Merriman")—never presented an "ER report from the medical condition that [was the] cause of detaining them." Id. at p. 17.[5] In addition, Plaintiff contends that these Defendants instructed Plaintiff to pack a bag and not return to her home, without showing any warrant, order, or eviction notice. Id.

Plaintiff also alleges that under the care of DFCS, her children were "shocked scared and abused for a year on no legal grounds." Id. at p. 6. For example, Plaintiff states that while the children lived at the foster home of McClary Baker ("Baker"), the "bruises and sadness set in." Id. Plaintiff further states that Baker took any toys, clothes, and toiletries that Plaintiff sent and failed to provide the children with pillows and blankets. Id.

In support of these allegations, Plaintiff includes in her Complaint a copy of a police report filed against Baker on August 5, 2013. Id. at pp. 37-38. The report contains statements of S.F. including various allegations of neglect by Baker. Id.

---

[5] Plaintiff's Complaint refers only to two "county cops." Dkt. No. 1, p. 17. However, the Complaint identifies Merriman as a Defendant and a "[c]ounty police [o]fficer." Id. at p. 3. Plaintiff has confirmed, in a later pleading, that she intended to refer to Merriman when discussing the two "county cops." Dkt. No. 29, pp. 2-3. While Merriman has clarified that she is a dispatcher, rather than a police officer, dkt. no. 18, p. 2 n.1, the Court, for the purposes of this Order, accepts as true Plaintiff's allegations regarding Merriman's involvement in the removal of the children. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010).

Plaintiff contends that she repeatedly reported the alleged abuse in the Baker home, but CASA Richard James ("James") kept writing that the children were happy. Id. at p. 6. Plaintiff maintains that she similarly informed Harris, who assured that she would find safe placement but nevertheless reported that the children were fine. Id.

According to Plaintiff, the children were moved from the Baker home to another foster home, where the alleged neglect persisted. Id. Plaintiff further states that, at the time of filing the instant Complaint, the children were in yet another foster home, with a "family that ha[d] over [the] state law limit of babies and kids." Id. She claims that S.F. seemed angry and that both children had "marks." Id. [6]

Plaintiff further alleges that her children received inadequate medical care while in the care of DFCS. See id. at p. 8. For example, she contends that when S.F. injured his wrist in September 2013, Harris indicated that she would take him to the emergency room but "never showed up." Id. Plaintiff avers that she called Harris and her supervisor—presumably, Pruitt—and threatened to call the police, prompting Harris to take S.F. to the emergency room. Id. A few days later, Harris notified Plaintiff that S.F. was rushed to the doctor for an emergency procedure on his wrist. Id. Plaintiff also attaches

---

[6] Plaintiff has not named the foster parents in these other foster homes as defendants in this action.

to her Complaint photographs of the children, which appear to show a skin rash, though the photographs are mostly unclear. Id. at p. 34.

In addition, Plaintiff complains that her children were overmedicated while in the custody of DFCS: "They have drugged my son so bad he's out of his mind." Id. at p. 7. In particular, Plaintiff reports that Keene, upon removing the children from Plaintiff's custody and leaving the children with Capece, gave Capece some pills for S.F.; however, S.F. had not been taking medication and had not seen a doctor. Id. at p. 17. Plaintiff also includes her e-mails to Harris, in which Plaintiff expressed concern that S.F. was receiving too much medication for his diagnoses of ADD, ADHD, anxiety, and depression. Id. at pp. 15, 17. As stated in one e-mail, dated January 15, 2014, "[I] requested the medicine be stopped due to racing heart and aggression along with a long list of dangerous effects on a growing child." Id. at p. 17.

Plaintiff's Complaint contains various filings from the state-court proceedings, discussed supra, in which Plaintiff contested the overmedication of the children. See id. at p. 18 (petition for deprivation); id. at p. 53 (motion of reunification); id. at p. 77 (motion requesting a medical evaluation). Plaintiff also attached a letter from a second doctor concurring with the prescribed medications, which

Plaintiff believes is evidence that DFCS did not follow a court order to have S.F. seen by another doctor. Id. at p. 19. In further support, Plaintiff points to an article addressing the "mass overmedication" of foster children, a copy of which Plaintiff includes in the Complaint. Id. at p. 73.

Plaintiff also suggests that DFCS has not been forthright in implementing the case plan. See id. at p. 7. Specifically, Plaintiff states that in Juvenile Court on July 10, 2013, DFCS denied having received a report from Plaintiff's doctor regarding her counseling goals, which Plaintiff maintains that DFCS had possessed for a month. Id. Plaintiff asserts that DFCS also represented that it could not reach the case plan documents at that time, because the DFCS office was closed for black mold. Id. Plaintiff goes on to make general allegations regarding mold at the DFCS office and claims that DFCS was engaged in the improper destruction of documents. Id. In support of these contentions, Plaintiff's Complaint includes an article on mold at the DFCS office and an article on an investigation into DFCS falsifying reports for grant funding. Id. at pp. 22, 28-30.

Plaintiff further complains that DFCS failed to follow through with the court-ordered visitation. See id. at pp. 78-85. To this end, Plaintiff attaches an e-mail thread from December 2013, which included Judge Rountree, Harris, and DFCS

AO 72A
(Rev. 8/82)

director Kristal Jones ("Jones"), among others. Id. In essence, the e-mails reflect either a lack of communication or a miscommunication between Plaintiff and DFCS regarding a perceived cancellation of her regularly scheduled visitation. Id. at p. 79. Ultimately, however, Jones apologized for the confusion and assured that the visitation would continue as scheduled. Id. at p. 83.

Furthermore, Plaintiff contends that the police officers failed to respond appropriately to her complaints regarding DFCS. Id. at p. 6. Plaintiff points to a police report, dated April 13, 2013, showing that Macy and Lynette Gallagher ("Gallagher") were called to DFCS when Plaintiff confronted DFCS with allegations of abuse, neglect, and "filth" in the DFCS visitation room. See id. at pp. 11-12. The report documents Plaintiff's allegations and shows that Macy and Gallagher met with various DFCS employees, including Pruitt. Id. at p. 12. According to Plaintiff, the facts in the report are incorrect, and the officers not only left the children in the poor conditions at the DFCS office but also delayed in filing the report. Id. In addition, Plaintiff states, "While being called bipolar and threaten[ed] with prison time by [O]fficer gauliger [sic] [I] was told again not to return to my home." Id. at p. 17.

AO 72A
(Rev. 8/82)

Plaintiff also expresses dissatisfaction with Judge Rountree's handling of the deprivation proceedings in Juvenile Court. See id. at pp. 31, 84. In the Complaint, Plaintiff includes an August 31, 2013, e-mail to Governor Nathan Deal stating that Plaintiff was "reporting [J]udge [Rountree] as well for letting such a case as wrong as mine" and for laughing at Plaintiff in court. Id. at p. 31. In another e-mail directed to Jones, Plaintiff asserted that the cases in Juvenile Court were not backed by facts and that Plaintiff wished to have the state remove Judge Rountree from the bench. Id. at p. 84. Plaintiff attaches to her Complaint a copy of the transcript for the April 11, 2013, adjudicatory hearing before Judge Rountree. Id. at pp. 40-51.

Finally, Plaintiff contends that many of the Defendants lied over the course of the state-court proceedings. See, e.g., id. at p. 7. For example, Plaintiff avers that DFCS and Chamberlain lied to Judge Rountree, stating that Plaintiff threatened to throw a brick through the window of DFCS. Id.; see also p. 84. According to Plaintiff, DFCS also lied to Judge Rountree regarding a police report—stating that the police report involved Plaintiff and Capece, when the report actually documented S.F.'s allegations of abuse. Id. at p. 6. In addition, Plaintiff states that Harris's testimony did not match the facts. Id. at p. 84. Plaintiff also contends that CASA

James "kept writing lies then got scared and let go of all his cases but [in the] last few reports . . . said [to] give [the] kids back." Id. at p. 7; see also id. at p. 31.[7]

## PROCEDURAL BACKGROUND

Plaintiff filed her Complaint in this Court on February 5, 2014. Dkt. No. 1, p. 1. Contemporaneously with the Complaint, Plaintiff filed a Motion for Leave to File In Forma Pauperis. Dkt. No. 2, p. 1. On February 7, 2014, the Court granted Plaintiff's Motion for Leave to File In Forma Pauperis and, accordingly, directed the United States Marshal Service to serve Defendants with a copy of Plaintiff's Complaint. Dkt. No. 5, p. 1.

Plaintiff's Complaint does not offer any basis for the Court's jurisdiction. See generally Dkt. No. 1. Presumably,

---

[7] Notably, Plaintiff's factual allegations make no mention of DFCS Director Chansenette Amison ("Amison"). Additionally, many allegations relate to agency oversight of DFCS and Plaintiff's complaints to Governor Nathan Deal and the Department of Human Services regarding the lack of oversight in this instance. Dkt. No. 1, p. 8; see also id. at pp. 31, 54. Those allegations involve only individuals not named as Defendants in this action and, therefore, are irrelevant here. Finally, Plaintiff's responses in opposition to the pending Motions to Dismiss introduce additional factual allegations not mentioned in the Complaint. See, e.g., Dkt. No. 29. However, the Court need not address those additional allegations, because factual allegations must appear on the face of the complaint to survive dismissal. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Erb v. Advantage Sales & Mktg., LLC, No. 6:11-cv-2629, 2012 WL 3260446, *3 (N.D. Ala. Aug. 3, 2012) ("Motions to dismiss brought pursuant to Rule 12(b)(6) test the sufficiency of the factual allegations contained in the complaint, and 'a party may not rely on new facts in submissions in response to a motion to dismiss to defeat the motion.'" (quoting Cherry v. City of Phila., No. 04-1393, 2004 WL 2600684, *3 (E.D. Pa. Nov. 15, 2004))); accord Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (alteration in original) (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984))).

Plaintiff seeks to proceed under 42 U.S.C. § 1983, on the basis that Defendants, acting under color of state law, violated Plaintiff's federal rights during the child deprivation process. See 42 U.S.C. § 1983 (2014).[8] Indeed, Plaintiff's Complaint lists the name and official title of each Defendant, see dkt. no. 1, pp. 3-4, suggesting that Plaintiff seeks to assert claims against these Defendants as state actors. Plaintiff's "Statement of Claim" in her Complaint states that Defendants acted in "[v]iolation of policies and[ ] procedures" and discriminated against her. Id. at p. 3. Elsewhere in the Complaint, Plaintiff avers that she was denied "due process" in the Juvenile Court. Id. at p. 7. Construing these claims favorably to Plaintiff, it appears that Plaintiff alleges violations of her Fourteenth Amendment rights to due process and equal protection.

It also appears that Plaintiff raises supplemental claims under Georgia law. Plaintiff's "Statement of Claim" accuses Defendants of "all forms of negligence" and "deflamation [sic] of [c]haracter." Id. at p. 3. In addition, Plaintiff's

---

[8] A failure to plead a basis for subject-matter jurisdiction on the face of the complaint can lead to dismissal under Federal Rule of Civil Procedure 12(h)(3). See Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); see also Fed. R. Civ. P. 8(a)(1) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the grounds for the court's jurisdiction."). Nevertheless, for the purposes of this Order, and given Plaintiff's pro se status, the Court will proceed as if Plaintiff had identified 42 U.S.C. § 1983 as the jurisdictional basis for this action.

Complaint repeatedly emphasizes that Defendants lied in their reports, communications, and representations to the Juvenile Court. See, e.g., id. at pp. 6-7. Plaintiff's allegations arguably constitute claims of negligence, defamation, and fraud actionable under The Georgia Tort Claims Act. O.C.G.A. §§ 50-21-20 to 50-21-37 (2014).[9]

Based on these claims, Plaintiff requests an Order from this Court requiring that Defendants return her children, stay away from her family, and clear her file at DFCS. Dkt. No. 1, p. 5. Plaintiff also seeks money damages in the amount of $8,000,000. Id.

On March 25, 2014, Rountree, Macy, Merriman, and Gallagher jointly moved to dismiss. Dkt. No. 18. Individual Motions to Dismiss then were filed by CASA James on March 31, 2014, dkt. no. 22, and Chamberlain on April 2, 2014, dkt. no. 24. On April 10, 2014, DFCS, Amison, Harris, Jones, and Pruitt filed a collective Motion to Dismiss. Dkt. No. 25. On May 29, 2014, Keene filed a Motion to Dismiss incorporating the collective

---

[9] Because Plaintiff's allegations of negligence, defamation, and fraud, dkt. no. 1, pp. 3, 7, do not implicate any federally guaranteed right, these claims could not support a Section 1983 claim. See Daniels v. Williams, 474 U.S. 327, 336 (1986) (holding that a state official's negligence is not actionable under § 1983); Paul v. Davis, 424 U.S. 693, 694 (1976) (holding that simple defamation by a state official does not give rise to a § 1983 claim); Vinyard v. Wilson, 311 F.3d 1340, 1345-46 (11th Cir. 2002) (demonstrating that in a § 1983 action, allegations of fraud give rise to separate claims under Georgia law). In addition, Plaintiff raises numerous legal theories in her responses to the pending Motions to Dismiss. See, e.g., Dkt. No. 29. The Court declines to consider each of those theories here, because those theories were not raised in the Complaint, see discussion supra note 6, and, in any event, would fail for the same reasons as the claims discussed herein.

Motion of DFCS and its employees. Dkt. No. 46.[10] The several Motions to Dismiss largely set forth the same grounds for dismissing Plaintiff's claims: lack of subject-matter jurisdiction based on the Rooker-Feldman doctrine and the Younger abstention doctrine, immunities under federal and state law, and failure to state a claim for relief. See generally Dkt. Nos. 18, 22, 24-25, 26.

Many of the Defendants also filed Motions to Stay Discovery until the Court could rule on their Motions to Dismiss. Dkt. Nos. 26, 28. Over Plaintiff's objection, dkt. nos. 37-38, the Court granted the Motions to Stay Discovery on May 6, 2014. Dkt. No. 43, p. 1.

The nonmoving Defendants include Baker, who filed an Answer on April 11, 2014, specifically responding to each of Plaintiff's allegations without raising any defenses. Dkt. No. 27. In addition, Lee has not filed a motion, or even a responsive pleading, as it appears that Lee has not been served a copy of the Complaint. The docket shows that on February 12, 2014, a U.S. Marshal sent Lee a Waiver of Service via certified mail to the DFCS address listed in Plaintiff's Complaint. Dkt. No. 63, p. 1; see also Dkt. No. 1, p. 3. On February 18, 2014, the Waiver of Service was returned unexecuted, because Lee

---

[10] To the extent that Keene's Motion is docketed as a Motion to Dismiss and a separate Motion for Joinder, dkt. no. 46, Keene's Motion for Joinder is **GRANTED**. See Fed. R. Civ. P. 12(g) ("A motion under this rule may be joined with any other motion allowed by this rule.").

apparently was no longer employed at DFCS.  Dkt. No. 63, p. 1.

The U.S. Marshal then mailed the Waiver of Service via certified

mail to a different address on May 9, 2014, which Lee signed for

on May 10, 2014, but never returned.  Id.  Having not received a

waiver from Lee, the U.S. Marshall attempted to serve Lee with

process but was unable to locate Lee as of November 7, 2014.

Id.

In addition, Plaintiff filed a Motion for Emergency Hearing

on June 2, 2014.  Dkt. No. 48.  Plaintiff's Motion explains that

the foster parent at that time did not allow the children to

attend visitation, causing Plaintiff to fear that the children

were "missing or worse."  Id. at p. 2.[11]

## LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a) requires that a

plaintiff's complaint contain both "a short and plain statement

of the grounds for the court's jurisdiction" and "a short and

plain statement of the claim showing that the pleader is

entitled to relief."  Fed. R. Civ. P. 8(a)(1)-(2).  A party may

move to dismiss the complaint under Federal Rule of Civil

Procedure 12(b), based on a "lack of subject-matter

jurisdiction" or a "failure to state a claim upon which relief

---

[11]  The docket also reflects that Plaintiff filed a "Motion to Object" to the
Motion to Dismiss filed by DFCS, Amison, Harris, Jones, Pruitt, and Keene,
dkt. nos. 25, 46.  Dkt. No. 51.  It appears that the Motion to Object should
have been docketed as a Response; however, to the extent that the Court must
rule on a docketed Motion, Plaintiff's Motion to Object, dkt. no. 51, is
**DENIED** for the reasons discussed infra.

can be granted." Fed. R. Civ. P. 12(b)(1),(6) ("Rule 12(b)(1)"

and "Rule 12(b)(6)"). In addition, a court, on its own, may

raise issues concerning subject-matter jurisdiction. See Fed.

R. Civ. P. 12(h)(3) (a court must dismiss an action "[i]f the

court determines at any time that it lacks subject-matter

jurisdiction" (emphasis added)); BellSouth Telecomms., Inc. v.

MCImetro Access Transmission Servs., Inc., 317 F.3d 1270, 1297

n.17 (11th Cir. 2003) (Tjoflat, J., dissenting) ("If the parties

do not raise the question of lack of jurisdiction, it is the

duty of the federal court to determine the matter sua sponte."

(emphasis omitted)). Moreover, where a plaintiff is proceeding

in forma pauperis, the Court must assess issues regarding the

legal sufficiency of a complaint even when a defendant has not

moved to dismiss. 28 U.S.C. § 1915(e)(2)(B)(ii) (2014)

(mandating that a court "dismiss the case at any time if the

court determines that" the action "fails to state a claim on

which relief may be granted" (emphasis added)).

A court applies the same standards of review in evaluating

dismissal based on a lack of subject matter jurisdiction and

based on a failure to state a claim. See Carmichael v. Kellogg,

Brown & Root Servs., Inc., 572 F.3d 1271, 1279 (11th Cir.

2009).[12] A court must accept as true the facts as set forth in

---

[12] On this point, the Court refers to facial challenges to subject-matter
jurisdiction. That is, motions to dismiss under Rule 12(b)(1) "can be
asserted on either facial or factual grounds." Carmichael, 572 F.3d at 1279.

the complaint and draw all reasonable inferences in the plaintiff's favor. Randall, 610 F.3d at 705. While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)) (interpreting Fed. R. Civ. P. 8(a)(2)). To be plausible on its face, a complaint must set forth enough facts to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In addition, a court must afford a pro se party, such as Plaintiff, leniency in applying procedural rules. See GJR Invs., Inc. v. Cnty. of Escambia, 132 F.3d 1359, 1369 (11th Cir. 1998), overruled on other grounds by, Swann v. S. Health Partners, Inc., 388 F.3d 834 (11th Cir. 2004). Even so, a court cannot "serve as de facto counsel for a party" or "rewrite an otherwise deficient pleading in order to sustain an action." Id. (emphasis omitted).

---

A "facial" challenge to subject-matter jurisdiction is based "solely on the allegations in the complaint. When considering such challenges, the court must, as with a Rule 12(b)(6) motion, take the complaint's allegations as true." Id. By contrast, a "factual" challenge to jurisdiction relies on facts and circumstances existing outside of the complaint; in those circumstances, a court "may consider extrinsic evidence such as deposition testimony and affidavits." Id. Because the Defendants attack subject-matter jurisdiction based on the events in Juvenile Court, and those events appear on the face of Plaintiff's Complaint, Defendants' jurisdictional challenge is facial. Indeed, to evaluate subject-matter jurisdiction in this case, the Court need not look beyond the Complaint—which, as discussed supra, includes the attachments thereto. Thus, for the purposes of this Order, the standards for reviewing the jurisdictional basis and the legal sufficiency of the Complaint are the same.

Ordinarily, a court's review on a motion to dismiss is limited to the factual allegations on the face of the complaint. See Iqbal, 556 U.S. at 678. If a court is presented with matters outside the pleadings on a motion to dismiss, the motion to dismiss is converted into one for summary judgment. Fed. R. Civ. P. 12(d).

However, there are certain instances in which a court may consider matters outside the pleadings without transforming a motion to dismiss into a summary judgment motion. See Davis v. Self, 547 F. App'x 927, 929 (11th Cir. 2013). For example, a court may consider copies of documents that a plaintiff has attached to the complaint. See Brooks v. Blue Cross and Blue Shield of Fla., 116 F.3d 1364, 1368 (11th Cir. 1997) (a court may examine "the face of the complaint and attachments thereto"). In addition, a court may look to documents that are central to, or referenced in, the complaint. See Davis, 547 F. App'x at 929 (a court may reference "other sources courts ordinarily examine when ruling on . . . dismissal, in particular, documents incorporated into the complaint by reference" (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007))). Finally, a court may also consider facts that are subject to judicial notice. See Fed. R. Evid. 201(a)-(d); Tellabs, Inc., 551 U.S. at 322; see also Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that

is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); Boateng v. InterAmerican Univ., Inc., 210 F.3d 56, 60 (1st Cir. 2000) (a court "may treat documents from prior state court adjudications as public records" subject to judicial notice).

## DISCUSSION

Defendants' Motions as well as this Court's obligations to review its jurisdiction and the sufficiency of claims brought in forma pauperis require the Court to apply the above-described standards to all of Plaintiff's claims.[13]

### I.    Section 1983 Claims

Construing Plaintiff's allegations in her favor, she seeks relief pursuant to Section 1983 for alleged violations of her rights to due process and equal protection under the Fourteenth Amendment. See Dkt. No. 1, pp. 3, 7. Specifically, Plaintiff asks the Court to order Defendants to return her children, stay away from her family, clear her file at DFCS, and pay $8,000,000 in damages. Id. at p. 5.

---

[13]  Given the Court's obligation to dismiss Plaintiff's claims at any time upon determining that this Court lacks subject-matter jurisdiction, Fed. R. Civ. P. 12(h)(3), or that Plaintiff fails to state a claim upon which relief can be granted, 28 U.S.C. § 1915(e)(2)(B)(ii), the Court will consider Plaintiff's claims against Lee and Baker along with those against the Defendants moving to dismiss.

### a. **Rooker-Feldman** Doctrine

In their Motions to Dismiss, Defendants argue that under the Rooker-Feldman doctrine, this Court lacks subject-matter jurisdiction to consider any claims attacking the outcome of the deprivation proceedings in Juvenile Court. See Dkt. No. 18, pp. 6-7; Dkt. No. 22, Ex. A, pp. 5-7; Dkt. No. 23, pp. 5-6; Dkt. No. 25, Ex. A, pp. 11-12.

Under the Rooker-Feldman doctrine, a federal district court lacks subject-matter jurisdiction "to review final judgments of a state court in judicial proceedings." D.C. Court of Appeals v. Feldman, 460 U.S. 462, 485 (1983) (holding that only the U.S. Supreme Court has authority to review such judgments). In effect, the doctrine "prevent[s] lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'" Bates v. Harvey, 518 F.3d 1233, 1240 (11th Cir. 2008) (quoting Lance v. Dennis, 546 U.S. 459, 460 (2006)).

"The doctrine extends not only to constitutional claims presented or adjudicated by a state court, but also to claims that are 'inextricably intertwined' with a state court judgment." Goodman ex rel. Goodman v. Sipos, 259 F.3d 1327, 1332 (11th Cir. 2001) (quoting Siegel v. LePore, 234 F.3d 1163, 1172 (11th Cir. 2000)). A federal claim is "inextricably

intertwined" with a state-court judgment if the claim would "effectively nullify" the state-court judgment or if the claim "succeeds only to the extent that the state court wrongly decided the issues before it." Id. at 1332-33 (quoting Siegel, 234 F.3d at 1172). However, even if a claim is inextricably intertwined with the judgment in state court, "the doctrine does not apply if the plaintiff had no 'reasonable opportunity to raise his federal claim in state proceedings.'" Id. (quoting Powell v. Powell, 80 F.3d 464, 467 (11th Cir. 1996)).

The Rooker-Feldman jurisdictional bar applies in this case. First, Judge Rountree's decision that S.F. and C.F. were deprived at the adjudicatory hearing, dkt. no. 1, p. 50, was a final judgment on the merits concerning the temporary custody of S.F. and C.F. See In re S.J., 607 S.E.2d 225, 232-33 (Ga. Ct. App. 2004) (distinguishing between proceedings to determine whether a child is deprived and those to decide custody and stating that "[a]n order within a deprivation proceeding deciding temporary custody of the child is a 'final order' . . . from which a direct appeal lies"). That decision occurred on April 11, 2013, dkt. no. 1, p. 40, before Plaintiff commenced this action on February 5, 2014, id. at p. 1.

Second, while Plaintiff did not present any due process or equal protection claim in the Juvenile Court, those claims are "inextricably intertwined" with Judge Rountree's judgment.

Plaintiff's allegations relate to actions taken by each of the Defendants in connection with either the removal of her children, the litigation in Juvenile Court, or the treatment of her children in foster care. See generally id. Thus, Plaintiff's constitutional claims concern the events leading up to, or resulting from, the loss of temporary custody over her children. For Plaintiff to succeed on these claims, this Court would have to conclude that Judge Rountree wrongly decided that the children were deprived and that the children should remain in foster care under temporary custody of the state. See Goodman ex rel. Goodman, 259 F.3d at 1334 (finding that Rooker-Feldman barred jurisdiction over the plaintiffs' due process claims against state officials, because the success of those claims would require finding that the state court wrongly decided to terminate the plaintiffs' parental rights and wrongly denied their petition for return of custody).

Finally, Plaintiff could have raised her due process and equal protection claims in the state-court proceedings. "Georgia law permits constitutional challenges to a juvenile court's orders to be brought in the juvenile court, and those challenges are subject to review by the Georgia Supreme Court, and ultimately by the United States Supreme Court." Id. As the record shows, the Juvenile Court conducted at least seven hearings after the adjudicatory hearing, three of which took

place after the filing of this case. See Dkt. No. 34, pp. 7, 29, 46; Dkt. No. 62, Ex. A, pp. 1, 29. Plaintiff should have raised, at that time, any constitutional issues concerning the decisions on deprivation and temporary legal custody.

Because the Rooker-Feldman criteria are met, this Court lacks jurisdiction to hear Plaintiff's constitutional claims. As a result, Plaintiff's Section 1983 claims against Defendants are due to be dismissed.

### b. **Younger** Abstention Doctrine

Plaintiff seeks to enjoin the Juvenile Court and Defendants from taking further action affecting the custody of her children. Defendants contend that the Younger abstention doctrine requires the Court to dismiss these constitutional claims for injunctive relief. Dkt. No. 18, p. 7 n.3; Dkt. No. 22, Ex. A, p. 6; Dkt. No. 23, p. 8; Dkt. No. 25, Ex. A, pp. 9-11.

The Younger abstention doctrine reflects "a strong federal policy against federal[ ] court interference with pending state judicial proceedings absent extraordinary circumstances." Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431 (1982). Where "vital state interests" are involved, a federal court should abstain from hearing a case "unless state law clearly bars the interposition of the constitutional claim." Id. at 432 (emphasis added) (quoting Moore v. Sims, 442 U.S.

415, 426 (1979)). To determine whether Younger requires abstention in a given case, a federal court must ask three questions: "first, do the proceedings constitute an ongoing state judicial proceeding; second, do the proceedings implicate important state interests; and third, is there an adequate opportunity in the state proceedings to raise constitutional challenges." 31 Foster Children v. Bush, 329 F.3d 1255, 1274 (11th Cir. 2003) (quoting Middlesex Cnty. Ethics Comm., 457 U.S. at 432). If the answer to all three questions is "yes," then a federal court must abstain from hearing a case in order to avoid interfering with the ongoing state-court proceedings.

Abstention is undeniably the appropriate course here. As to the first Middlesex factor, Plaintiff does not dispute that the deprivation proceedings in the Juvenile Court were ongoing at the time of filing this action on February 5, 2014. See Dkt. No. 1, pp. 1, 6-8; id. at Ex. A, p. 1. Plaintiff's submissions in this case of the Juvenile Court record further underscore the ongoing nature of those proceedings: the transcript of a motions hearing on March 24, 2014, at which time Judge Ross continued DFCS's temporary legal custody of the children, dkt. no. 34, pp. 29, 45; the guardian ad litem's motion to modify placement, dated June 19, 2014, dkt. no. 62, Ex. A, p. 25; and Judge Ross's orders on that motion and on his judicial review, both filed on July 30, 2014, id. at Ex. A, pp. 3, 23-24, 29. Because the

Juvenile Court continued to oversee DFCS's temporary legal custody of the children and had not yet rendered a final decision as to Plaintiff's parental rights, it is clear that there were ongoing judicial proceedings in the Juvenile Court at the time Plaintiff filed this action.

Put succinctly, the injunctive relief Plaintiff seeks—an Order granting Plaintiff unbridled custody over the children, restraining Defendants from having contact with the family, and directing DFCS to clear Plaintiff's file—would directly interfere with the ongoing proceedings in the Juvenile Court. See 31 Foster Children, 329 F.3d at 1279-80 (explaining that the dangers of a federal court issuing an order in this context include that the order could conflict with those issued by the state court or could require an amendment to the case plan that the state court would not have approved).

The second Middlesex factor also is present here. The Court of Appeals for the Eleventh Circuit has unequivocally stated that "[t]here is no doubt that matters involving domestic relations and child custody implicate important state interests." Davis, 547 F. App'x at 930 (citing Moore, 442 U.S. at 435). Thus, the child deprivation proceedings certainly implicate interests important to the State of Georgia.

With regard to the final factor of Middlesex, Plaintiff does not allege that she was unable to raise her constitutional

claims in the deprivation proceedings. Plaintiff has "the
burden of establishing that the state proceedings do not provide
an adequate remedy for [her] federal claims." 31 Foster
Children, 329 F.3d at 1279. "Minimal respect for the state
processes . . . precludes any presumption that the state courts
will not safeguard federal constitutional rights. A federal
court should assume that state procedures will afford an
adequate remedy, in the absence of unambiguous authority to the
contrary." Id. (internal quotation marks omitted) (quoting
Middlesex Cnty. Ethics Comm., 457 U.S. at 431. Thus, "what
matters is whether the plaintiff is procedurally prevented from
raising his constitutional claims in the state courts," not
whether those claims would likely be successful on the merits in
that forum. Davis, 547 F. App'x at 931 (quoting Pompey v.
Broward Cnty., 95 F.3d 1543, 1551 (11th Cir. 1996)). Nothing
suggests that the Juvenile Court procedure prevented Plaintiff
from raising her due process and equal protection claims and
seeking review in the state appellate court.

Because all three Middlesex factors are present, and
Plaintiff does not allege any "extraordinary circumstances"
suggesting otherwise, Younger requires that the Court abstain
from hearing Plaintiff's constitutional claims for injunctive
relief. Accordingly, the Younger abstention doctrine provides

an additional basis for dismissing Plaintiff's Section 1983 claims requesting this form of relief.

### c. Immunity

Defendants assert that Plaintiff also cannot sustain her damages claims under Section 1983, because some Defendants are shielded by respective doctrines of immunity. Dkt. No. 18, pp. 7-9; Dkt. No. 22, Ex. A, pp. 9-11; Dkt. No. 23, pp. 6-7; Dkt. No. 25, Ex. A, pp. 4-6, 8-9.

### 1. Judicial Immunity

Judge Rountree maintains that the doctrine of judicial immunity provides him with complete immunity from all claims against him, not just from the eventual assessment of damages. Dkt. No. 18, p. 7.

Judges are afforded "absolute judicial immunity from damages for those acts taken while they are acting in their judicial capacity unless they acted in the 'clear absence of all jurisdiction.'" Davis, 547 F. App'x at 932 (emphasis in original) (quoting Bolin v. Story, 225 F.3d 1234, 1239 (11th Cir. 2000)). Judicial immunity "applies even when the judge's acts are in error, malicious, or were in excess of his or her jurisdiction." Id. (quoting Bolin, 225 F.3d at 1239).

To determine whether a judge was acting in his or her judicial capacity, courts consider whether: "(1) the act complained of constituted a normal judicial function; (2) the

AO 72A
(Rev. 8/82)

events occurred in the judge's chambers or in open court; (3) the controversy involved a case pending before the judge; and (4) the confrontation arose immediately out of a visit to the judge in his judicial capacity." Sibley v. Lando, 437 F.3d 1067, 1070 (11th Cir. 2005) (citing Scott v. Hayes, 719 F.2d 1562, 1565 (11th Cir. 1983)).

The allegations in Plaintiff's Complaint clearly indicate that Judge Rountree acted in his judicial capacity. For example, Judge Rountree appears in Plaintiff's Complaint only in the following instances: in the list of Defendants, dkt. no. 1, p. 3; in the transcript of the adjudicatory hearing on April 11, 2013, id. at pp. 40-51; in Plaintiff's e-mail to Governor Nathan Deal stating that Plaintiff was "reporting [J]udge [Rountree] as well for letting such a case as wrong as mine" and for laughing at Plaintiff in court, id. at p. 31; and in Plaintiff's e-mail to Jones asserting that the Juvenile Court cases were not backed by facts and that Plaintiff wished to have Judge Rountree removed from the bench, id. at p. 84. Notably, these factual allegations concern only Judge Rountree's actions while presiding over the deprivation hearings—a normal judicial function, in open court, involving a case pending before him. Thus, Judge Rountree was acting in his judicial capacity.

Furthermore, Plaintiff does not allege that Judge Rountree was acting in the "clear absence of all jurisdiction." See

Davis, 547 F. App'x at 932 (quoting Bolin, 225 F.3d at 1239).

Indeed, Georgia law grants Juvenile Courts jurisdiction to

preside over deprivation proceedings. See O.C.G.A. § 15-11-10.

As a Judge in the Juvenile Court, Judge Rountree's actions taken

in his judicial capacity were within the scope of his

jurisdiction.

On this basis, Judge Rountree is absolutely immune from

Plaintiff's constitutional claims for money damages.

Plaintiff's allegations of error do not change this result. See

Davis, 547 F. App'x at 932 (quoting Bolin, 225 F.3d at 1239).

### 2. Prosecutorial Immunity

Chamberlain cites the doctrine of prosecutorial immunity as

protecting him against any claim based on his actions taken as a

SAAG in the deprivation proceedings. Dkt. No. 23, pp. 6-7.

A prosecutor is entitled to "absolute immunity from

allegations stemming from the prosecutor's function as

advocate." Hart v. Hodges, 587 F.3d 1288, 1295 (11th Cir. 2009)

(quoting Jones v. Cannon, 174 F.3d 1271, 1281 (11th Cir. 1999)).

Thus, a prosecutor's absolute immunity encompasses "acts

undertaken in preparing for the initiation of judicial

proceedings or for trial, and which occur in the course of his

role as an advocate for the State." Id. (quoting Jones, 174

F.3d at 1281). These actions are afforded absolute immunity

"even if undertaken with malicious intent." *Davis*, 547 F. App'x at 933 (citing *Hart*, 587 F.3d at 1295).

While prosecutorial immunity traditionally arises in the context of criminal proceedings, the United States Supreme Court has held that, in civil proceedings, executive branch officials "performing certain functions analogous to those of a prosecutor" are similarly entitled to absolute immunity from damages claims under Section 1983. *Butz v. Economou*, 438 U.S. 478, 515 (1978); *see, e.g.*, *Davis*, 547 F. App'x at 933 (finding that district attorneys, empowered under Alabama law "to represent the state in enforcing child support orders by initiating civil or criminal actions," were entitled to absolute immunity).

Plaintiff's allegations against Chamberlain relate to his actions pursuant to that statute. Plaintiff attaches to her Complaint a transcript of the April 11, 2013, adjudicatory hearing showing that "Chamberlain, SAAG" was present, acted as the attorney for DFCS, and examined the witnesses. Dkt. No. 1, pp. 40-51. Plaintiff also accuses Chamberlain of "unhanded stunts" and "lies" at another hearing. *Id.* at p. 77.

All of Plaintiff's allegations pertain to Chamberlain's role as a SAAG in initiating deprivation proceedings and advocating on behalf of DFCS. Because this role is prosecutorial in nature, Chamberlain is afforded absolute

immunity in the performance of his duties.  Furthermore,

Plaintiff does not allege that Chamberlain acted outside the

scope of his duties as a SAAG at any time.  While Plaintiff

contends that Chamberlain engaged in "unhanded stunts" at a

hearing, id., this contention, without more, still relates to

Chamberlain's actions while advocating on behalf of DFCS.  See

Davis, 547 F. App'x at 933 (stating that absolute immunity even

protects actions taken with malicious intent).

### 3. Eleventh Amendment Immunity

The Defendants further maintain that the Eleventh Amendment

and principles of sovereign immunity bar Plaintiff's claims

against DFCS and against the remaining state-actor Defendants in

their official capacities.  Dkt. No. 25, Ex. A, pp. 4-6.

States are immune from private suits pursuant to the

Eleventh Amendment and traditional principles of state

sovereignty.  Alden v. Maine, 527 U.S. 706, 712-13 (1999).

Furthermore, Section 1983 does not abrogate the well-established

immunities of a state from suit without its consent.  Will v.

Mich. Dep't of State Police, 491 U.S. 58, 67 (1989).  Because a

lawsuit against a state agency or a state officer in his

official capacity is "no different from a suit against the

[s]tate itself," these defendants are immune from suit under

§ 1983.  Id. at 71.

Plaintiff sets forth numerous allegations against DFCS and various state officials. See generally Dkt. No. 1. Because the State of Georgia would be the real party in interest in a suit against DFCS and against the state Defendants in their official capacities, the Eleventh Amendment immunizes these actors from suit. See Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989). Absent a waiver of that immunity, Plaintiff cannot sustain any constitutional claims for money damages against these Defendants in their official capacities.

### 4. Qualified Immunity

Defendants further allege that the doctrine of qualified immunity protects any Defendants who are government officials from claims seeking money damages from them in their individual capacities. Dkt. No. 18, pp. 8-9; Dkt. No. 22, Ex. A, p. 11[14]; Dkt. No. 23, p. 7 n.2; Dkt. No. 25, Ex. A, pp. 8-9.

Qualified immunity "protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." Andujar v. Rodriguez, 486 F.3d 1199, 1202 (11th Cir. 2007) (internal quotation marks

---

[14] CASA James argues that he is entitled to qualified immunity. Dkt. No. 22, Ex. A, p. 11. If there is any issue as to whether a CASA is considered to be a state official, the Court need not resolve it here. To the extent that James is a state actor, qualified immunity bars the claims against him in his individual capacity. To the extent that he is not a state actor, James is not subject to suit under Section 1983 as a private actor.

omitted) (quoting Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003)). A government official who raises qualified immunity as an affirmative defense "must initially establish that he was acting within his discretionary authority." Skop v. City of Atl., 485 F.3d 1130, 1136 (11th Cir. 2007). If it is shown that the official was acting within the scope of his discretionary authority, "the burden shifts to the plaintiff to show that the official is not entitled to qualified immunity." Id. at 1136-37.

For the plaintiff to overcome qualified immunity, she must show that "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004); see also Davis, 547 F. App'x at 933 ("Meanwhile, as the Supreme Court recently reiterated, "[q]ualified immunity . . . protects all but the plainly incompetent or those who knowingly violate the law." (quoting Messerschmidt v. Millender, 132 S. Ct. 1235, 1244 (2012))).

According to Defendants, "[t]he complaint indicates that, at all times relevant to Plaintiff's allegations, the State Defendants were acting within their duties as state officers or employees, and thus they were acting within the scope of their discretionary authority." Dkt. No. 25, Ex. A, p. 9; see also Dkt. No. 18, pp. 8-9; Dkt. No. 22, Ex. A, p. 11; Dkt. No. 23,

p. 7 n.2.  Indeed, Plaintiff alleges that Defendants violated her due process and equal protection rights in connection actions taken while the Defendants were performing job-related duties.  See Holloman ex rel. Holloman, 370 F.3d at 1265 ("We ask whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize); see, e.g., Dkt. No. 1, p. 12 (alleging that Macy and Gallagher misconstrued facts and delayed filing in completing a police report).  Thus, Defendants have established that they were acting within their discretionary authority.

Plaintiff cannot meet her burden to overcome the Defendants' assertion of qualified immunity.  Plaintiff alleges that Defendants deprived her of her rights to due process and equal protection by acting in "[v]iolation of policies and[ ] procedures" and discriminating against her.  Id. at pp. 3, 7.  As Defendants note, because Plaintiff has not specified how the individual state Defendants violated her rights, "she has certainly not alleged facts showing that any of them violated a clearly established right."  Dkt. No. 18, p. 9.

Indeed, from Plaintiff's Complaint, it is unclear which policies and procedures Defendants may have violated and how the Defendants may have discriminated against her.  See Chen ex rel. V.D. v. Lester, 364 F. App'x 531, 534 (11th Cir. 2010)("While

Plaintiffs generally assert that these defendants' actions violated equal protection and due process, they fail to articulate what specific rights these defendants violated or to explain how these defendants violated those rights.").

Furthermore, Plaintiff "cites to no clearly established legal precedent that would have put the state executive-branch [D]efendants on notice that their actions were unlawful." Davis, 547 F. App'x at 933. Without more, Plaintiff's conclusory allegations are insufficient to establish a violation of a clearly established right. Consequently, the doctrine of qualified immunity shields Defendants who are government actors from any Section 1983 claims seeking money damages from them individually.

### 5. **Private Actors**[15]

Baker, as a private party, is not subject to suit under Section 1983. While Baker's Answer does not specifically raise any defense to Plaintiff's potential Section 1983 claims, see generally dkt. no. 27, the Court raises this issue sua sponte. See 28 USC § 1915(e)(2)(B)(ii) (requiring a court to dismiss an action in forma pauperis at any time that it determines that it fails to state a claim for relief).

---

[15] In this subsection, the Court discusses only Baker as a private actor. However, as discussed supra, if CASA James is also a private actor, then he, like Baker, is not subject to suit under Section 1983 for the reasons stated here.

An essential element of a Section 1983 claim is that the act allegedly violating the plaintiff's rights must be committed by a person acting under color of state law. 42 U.S.C. § 1983. While the state-actor requirement traditionally precludes suit against a private party under this section, a private party may qualify as a state actor for Section 1983 purposes in "rare circumstances." See Harvey v. Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992). The Court of Appeals for the Eleventh Circuit recognizes a private party as a state actor only when one of three tests is satisfied: "the state compulsion test, the public function test, or the nexus/joint action test." Davis, 547 F. App'x at 933-34 (citing Rayburn ex rel. Rayburn v. Hogue, 241 F.3d 1341, 1347 (11th Cir. 2001)). Importantly, the Eleventh Circuit has determined that foster parents are not state actors for Sectin 1983 purposes. Rayburn ex rel. Rayburn, 241 F.3d at 1349.

According to Plaintiff's Complaint, Baker is a foster parent for children in the custody of DFCS. Dkt. No. 1, p. 3. Plaintiff's allegations of wrongdoing pertain only to Baker's actions as a foster parent, id. at pp. 6, 37-38, and Plaintiff never suggests that Baker serves the state in any other position. Even assuming, arguendo, that Baker violated Plaintiff's due process or equal protection rights while acting as a foster parent, those violations would not be actionable

under Section 1983. Because Baker is outside the scope of Section 1983, Plaintiff fails to state any claim for relief against Baker on this basis.

### d. Conclusion

In sum, this Court lacks subject-matter jurisdiction over Plaintiff's Section 1983 claims, pursuant to the Rooker-Feldman doctrine. Aside from that doctrine, the Younger abstention doctrine prevents this Court from hearing Plaintiff's claims for injunctive relief pursuant to Section 1983, and principles of immunity preclude Plaintiff's damages claims under that section against government actors. Moreover, Plaintiff cannot assert claims against private actors under Section 1983.

Because Plaintiff cannot sustain any Section 1983 claims in this Court against any Defendant, the Court need not determine whether Plaintiff's allegations of constitutional violations are sufficient to state a claim for relief under Section 1983. See Davis, 547 F. App'x at 934 ("Because we find that no defendant may be held liable for damages under § 1983 and the district court properly dismissed [the plaintiff's] claims for injunctive and declaratory relief under Younger, we do not reach [the plaintiff's] arguments that the defendants violated his constitutional rights.").

For these reasons, the Defendants' Motions to Dismiss are **GRANTED** as to Plaintiff's federal claims. Plaintiff's claims

for relief under Section 1983 against all Defendants are **DISMISSED**.

## II. State-law Claims

Plaintiff also alleges negligence, defamation, and fraud under Georgia law. Dkt. No. 1, pp. 3, 6-7. Defendants raise several grounds for dismissing Plaintiff's state-law claims: that Plaintiff's Complaint fails to comply with the Georgia Tort Claims Act; that the Complaint fails to state any claim for relief under Georgia law; that certain actions of the Defendants are privileged; and that Defendants are immune from suit. Dkt. No. 18, pp. 8-11; Dkt. No. 22, Ex. A, pp. 7-10; Dkt. No. 23, pp. 2-4, 6-7; Dkt. No. 25, Ex. A, p. 12. However, the Court need not reach these arguments, because it appears that the Court lacks subject-matter jurisdiction to entertain Plaintiff's state-law claims any further.

Pursuant to Rule 12(h)(3), the Court must dismiss an action at any time that it determines that it lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(h)(3). Because Plaintiff cannot proceed on her asserted federal claims, and all named Defendants reside in Georgia, Plaintiff has no basis for invoking the jurisdiction of this Court. See 28 U.S.C. §§ 1331-32 (explaining that federal courts have jurisdiction over cases involving a federal question or diversity). Because the Court has no jurisdiction to hear these claims standing alone,

Defendants' Motions to Dismiss Plaintiff's state-law claims are **GRANTED**, and these claims are **DISMISSED WITHOUT PREJUDICE** as to all Defendants.[16]

### III. Motion for Emergency Hearing

Plaintiff's Motion for Emergency Hearing requests this Court to intervene in a dispute with a foster parent regarding visitation on June 2, 2014. Dkt. No. 48, p. 2. According to a later pleading, Plaintiff "agreed to drop the motion for an Emergency Hearing" while in the Juvenile Court on June 6, 2014, and later regretted that agreement. Dkt. No. 52, p. 1. However, because Plaintiff never communicated to this Court that she intended to withdraw her Motion, the Motion is still pending on the docket in this case.

Based on pleadings filed after Plaintiff's Motion, it appears that custody over S.F. and C.F. was returned to Plaintiff pursuant to an order of the Juvenile Court filed on July 30, 2014. Dkt. No. 62, Ex. A, pp. 23-24, 29. In any event, the Court has dismissed all of Plaintiff's claims against the named Defendants and has no basis for entertaining the

---

[16] It is worth noting that, given the many jurisdictional bars and immunity doctrines precluding Plaintiff from asserting her federal and state claims against these Defendants, Plaintiff could not cure these deficiencies by amending her Complaint. Cf. Langlois v. Traveler's Ins. Co., 401 F. App'x 425, 426-27 (11th Cir. 2010) (finding that the lower court should have allowed a pro se litigant an opportunity to amend deficiencies in his complaint prior to dismissal, based on evidence that amendment may not have been futile). Any additional federal or state claim based on these facts would likewise fail for the reasons herein.

motion for an emergency hearing.  Thus, Plaintiff's pending

Motion for Emergency Hearing is **DENIED as moot.**

## CONCLUSION

Based on the foregoing, Defendants' Motions to Dismiss,

dkt. nos. 18, 22, 24-25, 30, 46, are hereby **GRANTED,** and

Plaintiff's claims against these Defendants are **DISMISSED.**

Plaintiff's claims against the nonmoving Defendants are also

**DISMISSED.**  Accordingly, Plaintiff's Motion to Object, dkt. no.

51, is **DENIED,** and her Motion for Emergency Hearing, dkt. no.

48, is **DENIED as moot.**  The Clerk of Court is **DIRECTED** to close

this case.

**SO ORDERED,** this ___31___ day of ___March___, 2015.

_____
LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA